569 A.2d 333

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dante J. TODARO, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1989.

Decided Jan. 31, 1990.

66

Francis L. Baca, Somerset, for appellant.

David J. Flower, Dist. Atty. and James M. Jacobs, Jr., Somerset, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

The facts in this case are as follows: Appellant, Dante J. Todaro, and a co-actor, Larry Albert Kinsey, were apprehended traveling in an automobile containing items stolen in numerous burglaries committed in southern Somerset County. Both were charged with the burglaries and related offenses. Kinsey pled guilty, while Appellant chose to go to trial before a jury in the Court of Common Pleas of Somerset County.[1] Appellant was convicted on four of the informations filed against him, each relating to a different burglary. As to each of the four burglaries, he was convicted of various and different charges, including burglary itself, theft, criminal mischief, conspiracy and violations of the Uniform Firearms Act, and was sentenced accordingly. The Superior Court, 378 Pa.Super. 653, 544 A.2d 1046, affirmed the judgments of sentence. Although appellant raised three issues in his Petition for Allowance of Appeal, we granted the Petition limited to the issue of whether a mistrial must be declared where a co-actor is called as a witness by the Commonwealth, is sworn and takes the witness stand, and then leaves the witness stand, without explanation to the jury. We did so in order to determine

---

1. While the parties have referred to Kinsey throughout these proceedings as a "co-defendant," that designation is not accurate. When the incident that is central to this appeal took place, at trial, Kinsey was no longer a co-defendant. We refer to him throughout this opinion as a "co-actor."

whether such conduct was consistent with our decisions in *Commonwealth v. DuVal*, 453 Pa. 205, 307 A.2d 229 (1973) and *Commonwealth v. Virtu*, 495 Pa. 59, 432 A.2d 198 (1981). For the reasons set forth below, we find it to be consistent with our earlier decisions and hence affirm.

On the day of trial, March 25, 1986, Kinsey was called to the stand by the Commonwealth. After being sworn, he quietly turned to the trial judge and requested to plead the Fifth, stating that he did not want to testify. The request was deemed proper since he had not yet been sentenced on his guilty plea.

The trial judge called counsel to side bar and informed them of Kinsey's request, which neither of them had heard. He granted a recess and, out of the presence and hearing of the jury, he heard the prosecuting attorney explain that the witness, the day before, had indicated he would have no problem in testifying. Defense counsel complained that he had told the prosecuting attorney two months before that the witness would invoke his Fifth amendment privilege and refuse to testify. He argued, therefore, that a mistrial must be granted in accordance with the rule we have laid down in *DuVal, supra.* At side-bar, the following exchange took place:

MR. BACA: Do you intend to call Kinsey?

MR. YELOVICH: Sure. He's in the jail. I talked to him yesterday.

MR. BACA: Is he going to testify?

MR. YELOVICH: I think so. I'm not going to rely on him. I don't know what he's going to say.

(T.T., 3/25/86, p. 45).

In the absence of any contradiction from the defense counsel, the trial judge obviously accepted the statement of the district attorney and denied the request for a mistrial, ruling that no prejudice had resulted to the appellant. Kinsey was excused from testifying and left the witness stand. The jury was recalled and the case resumed. No

explanations were given or comments made by anyone regarding the comings and goings of Kinsey.

A subsequent request for mistrial on grounds that the appearance of Kinsey on the witness stand and his release without testifying was prejudicial to the Appellant was again denied. The issue was raised in post-verdict motions and rejected and again on appeal to the Superior Court where the denial of the mistrial motion was upheld on the grounds that no prejudice had occurred from the co-actor's merely taking the witness stand and then not testifying. We agree.

In *Commonwealth v. DuVal, supra,* we held, "that the prosecution, once informed that a witness intends to claim a privilege against self-incrimination, commits error in calling that witness to the stand before the jury where the witness is a person (co-defendant, accomplice, associate, etc.) likely to be thought by the jury to be associated with the defendant in the incident or transaction out of which the criminal charges arose." 453 Pa. at 217, 307 A.2d at 234. See also, *Commonwealth v. Virtu, supra.* The necessity for proceeding out of the hearing of the jury is not obviated because a co-defendant has entered a plea of guilty. See, *Commonwealth v. Davenport,* 453 Pa. 235, 239–240, 308 A.2d 85, 87 (1973). Similarly, it is not an adequate answer that the court or the prosecution believes the assertion of the privilege to be invalid.

Appellant claims that the District Attorney knew well in advance that Kinsey would invoke his Fifth Amendment privilege, this in spite of the District Attorney's assertions to the contrary made to the trial judge, as set forth above. Under other circumstances, a hearing into the matter would have been justified and even necessary. Nonetheless, failure to hold such a hearing in this case did not lead to reversible error because, as the Superior Court properly found, Appellant was not prejudiced by what happened here in the first place.

The vice of permitting a co-actor to assert the privilege against self-incrimination in front of the jury was explained by this Court in *Commonwealth v. DuVal, supra*, as follows:

> It is clear beyond question that no inference can be taken against the person invoking this privilege. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Although it could be argued that under certain circumstances, a refusal to testify on grounds of self-incrimination might have probative value in establishing an issue in a matter to which the witness was not a party, we have recently held that it is not permissible for either defense or prosecution to attempt to capitalize on such refusal. *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971). Where it is the prosecutor who attempts to use such a device, there is a special vice: the inference to be drawn from the refusal to testify of the defendant's co-defendant, accomplice or associate has *no probative value whatsoever* in establishing the guilt of the defendant. It is rather an effort to cause the jury to think "guilt by association."

307 A.2d at 232–233.

In other words, there is a distinct danger that a refusal to testify on Fifth Amendment grounds will be taken by some jurors, improperly, as evidence of guilt; and that a refusal to testify on Fifth Amendment grounds by a known co-actor will be taken, again improperly, as evidence of a defendant's guilt by association. Here, however, the assertion of the privilege was not made within the jury's hearing. It is difficult to see how they could draw any reasonable inference of anything. Appellant argues that when Kinsey was called and then permitted to leave without testifying, that the jury was already aware that Kinsey was involved in this particular case since there was prior testimony regarding Kinsey being an occupant of the automobile driven by Appellant. Thus, he argues, the appearance of Kinsey and his being excused from testifying for no apparent reason would be sufficient to prejudice him in the eyes of the jury.

Knowing that Kinsey had certain stolen items in his possession from the various burglaries, the jury could impute Kinsey's guilt onto Appellant. This is the sheerest speculation! The jury was just as likely to conclude that Mr. Kinsey had decided at the last minute to testify against the Commonwealth and was dismissed for that reason. In truth, we conclude that there was nothing that occurred here that would be likely to cause the jury to infer *anything,* one way or the other. Taken to its logical conclusion, Appellant's argument would lead to the discharge of every defendant who appeared in court but who declined to testify on his own behalf because the jury could always "improperly" infer that silence connotes guilt. That is absurd. It is the expressed, highlighted reference to the Fifth Amendment privilege that may prejudice or influence a jury, not mere silence itself. The trial court concluded that Appellant was not prejudiced by what happened here. We agree. That conclusion was reasonable and represents a sound exercise of discretion on the part of the trial court. We will not disturb it. A mere odd or unexplained occurrence during a trial does not justify the conclusion that the jury has drawn an inference prejudicial to the defendant. In accord, see, *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325 (1971), *cert. denied,* 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589; *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. Riggins,* 478 Pa. 222, 386 A.2d 520 (1978); *Commonwealth v. Starks,* 484 Pa. 399, 399 A.2d 353 (1979).

Affirmed.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

The majority concludes that any damaging inference drawn by the jury would be mere speculation and therefore the Appellant suffered no prejudice. I must dissent.

As the majority correctly recites, in *Commonwealth v. DuVal,* 453 Pa. 205, 307 A.2d 229 (1973) we held that a

harmful error occurs if a witness claiming a privilege against self-incrimination takes the stand before the jury when that witness is likely to be associated with the defendant. We based our holding on the fact that the jury may infer that the witness's testimony would be harmful to the defendant, thereby causing his silence. This appeal goes one step further. Here, the witness did not actually assert the privilege but merely disappeared without explanation. The majority concludes that any inference of "guilt by association", which was the evil we attempted to preclude in *DuVal,* is speculative in that the jury was "as likely to conclude that Mr. Kinsey had decided at the last minute to testify against the Commonwealth and was dismissed for that reason." (Maj. Opinion at p. 70). Such speculation on the part of the majority is not reasonable. If Kinsey intended to present evidence unfavorable to the Commonwealth and favorable to the Appellant it is more reasonable to conclude that the Appellant would have attempted to call Kinsey as a witness.

Furthermore, I disagree with the majority's argument that to permit a new trial in this matter would result in "the discharge of every defendant who appeared in court but declined to testify on his own behalf because the jury could always 'improperly' infer that silence connotes guilt." (Maj. Opinion at 336). In most instances, the jury is advised by defense counsel that the defendant's failure to testify shall not be considered as an admission of guilt, and is usually instructed as such by the court. Thus, adhering to the rationale of *DuVal* will not "open the floodgates".

I realize that there are significant factual differences between this appeal and *DuVal.* However, the evil we attempted to preclude in *DuVal* exists here, i.e., the possibility that the jury will infer "guilt by association". Here the jury was aware that Kinsey possessed certain items from the various burglaries. The fact that the jury did not hear Kinsey assert the magic words of the privilege against self-incrimination does not relegate his mysterious disappearance to a nullity. Kinsey was called as a witness, took

the witness stand and then did not testify. In *DuVal*, we preferred "to give the defendant the benefit of the doubt as to whether or not the error could have been cured by an instruction". 453 Pa. at 218, 307 A.2d at 235. I believe that the Appellant was entitled to no less in this instance. Therefore, I dissent.