**Dante TODARO # AJ–1779, Appellant,**

v.

**Thomas A. FULCOMER; Ernest D. Preate, Jr.; and Somerset District Attorney's Office.**

**No. 90–3756.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) May 8, 1991.

Decided Sept. 10, 1991.

Rehearing Denied Oct. 9, 1991.

Thomas S. White and Dennis M. Stefan, Office of Federal Public Defender, Pittsburgh, Pa., for appellant.

Carolann A. Young, Asst. Dist. Atty., Somerset County, Somerset, Pa., for appel-

lee Somerset County Dist. Attorney's Office.

Before MANSMANN, NYGAARD and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal from the denial of a petition for a writ of habeas corpus requires us to decide whether the presumption that state court factual findings are correct should be rejected because the factfinding procedure employed by the state court did not adequately afford a full and fair hearing. Defendant, Dante Todaro, convicted of burglary and other various offenses following a jury trial, contends that his alleged co-conspirator's appearance on the stand deprived Todaro of fundamental fairness in his criminal trial. Todaro alleges that a federal evidentiary hearing is necessary to establish whether prosecutorial misconduct occurred and whether his co-conspirator's invocation of the fifth amendment unfairly prejudiced him. The district court denied petitioner's petition without an evidentiary hearing. We affirm.

## I.

On August 13, 1985, Todaro and his companion, Larry Albert Kinsey, were arrested in Somerset County, Pennsylvania, while traveling in an automobile containing stolen property. Todaro and Kinsey were charged with four counts of burglary and related offenses. Kinsey pled guilty, whereas Todaro elected to be tried by a jury and was convicted of burglary, theft, criminal mischief, conspiracy, and state firearms violations. Todaro alleges that Kinsey's invocation of the fifth amendment privilege against self-incrimination during the trial set in motion a series of circumstances which prejudiced him and resulted in fundamental unfairness.

Prior to Kinsey's appearance on the witness stand, other witnesses called by the prosecution had mentioned his name and had given testimony regarding Kinsey, including victims of the burglaries. State Trooper Blasko, the officer who arrested Todaro and Kinsey, testified that Kinsey was a passenger in the vehicle stopped for speeding; that Blasko found stolen goods, including numerous weapons, in the vehicle; that he handcuffed both Todaro and Kinsey; that he advised them orally of their Miranda rights; and that Kinsey signed the written statement acknowledging that his Miranda rights were given to him, but that Todaro refused to sign the waiver form. In the presence of the jury, the prosecutor argued that the waiver form was relevant because both defendants had given statements that "w[ould] be in evidence later."

State Trooper Marker testified, stating that he advised one of the burglary victims to go to the jail to secure the victim's missing watch from Kinsey and that the victim identified the watch as his. State Trooper James Bee also testified, stating that he took down Kinsey's statement. When the defense objected to this line of questioning, the prosecutor responded that he believed he was entitled to show the inconsistency between Kinsey's and Todaro's statements. The court sustained the defense's objection and permitted no further questioning regarding Kinsey's statement.

The question of whether Kinsey would testify first arose in conjunction with the testimony of State Trooper Bee. Defense counsel objected on relevancy grounds to Officer Bee's testimony concerning an exhibit of the form he sent to ascertain whether Kinsey had a permit to carry a firearm. Following the court's decision to sustain the objection, the prosecutor requested a side-bar conference at which he argued that he had the right to use Kinsey's statement given to the arresting officers as long as Todaro's name was not mentioned. At that side-bar conference, the following exchange took place:

Mr. Baca [defense counsel]: Do you intend to call Kinsey?

Mr. Yelovich [prosecutor]: Sure. He's in the jail. I talked to him yesterday.

Mr. Baca: Is he going to testify?

Mr. Yelovich: I think so. I'm not going to rely on him. I don't know what he's going to say.

The court ruled that Kinsey's statement was inadmissible.

Later in the trial, the prosecution called Kinsey to testify. Although he had pled guilty, he had not yet been sentenced. Prior to any testimony, Kinsey, from the witness stand, turned to the trial judge and informed him that he wished to invoke his privilege against self-incrimination. After conferring with counsel at side-bar, and then during a trial recess that he called, the trial judge ruled that he would grant the privilege since Kinsey had not yet been sentenced. The judge then excused the witness without questioning and without explanation to the jury. The court denied the motion of the defense for a mistrial.

Todaro alleges that the preceding testimony regarding Kinsey and the circumstances surrounding Kinsey's appearance and excusal from the witness stand denied him a fair trial under the fourteenth amendment. This issue was raised and rejected at trial, in post-trial motions, and on appeal to the Pennsylvania Supreme Court. *See Commonwealth v. Todaro,* 524 Pa. 64, 569 A.2d 333 (1990). The Commonwealth does not dispute that Todaro exhausted his state remedies with respect to this issue. The United States District Court for the Western District of Pennsylvania denied Todaro's petition for a writ of habeas corpus without a hearing. A timely notice of appeal followed and this court subsequently issued a certificate of probable cause.

## II.

■ State prisoners are entitled to relief on writ of habeas corpus in federal court only upon showing a violation of federal constitutional standards. *Milton v. Wainright,* 407 U.S. 371, 377, 92 S.Ct. 2174, 2178, 33 L.Ed.2d 1 (1971). Thus, "we sit not to retry state cases *de novo* but rather to examine the proceedings in the state court to determine if there has been a violation of federal constitutional standards." *Zettlemoyer v. Fulcomer,* 923

F.2d 284, 291 (3rd Cir.1991). Where the district court denies the petition for a writ of habeas corpus in the absence of an evidentiary hearing, we employ a two-step analysis. *Id.* First, whether the petitioner asserts facts which entitle him to relief. *Id.* at 291. Second, if the petition does allege facts that establish a constitutional violation, we must then determine whether an evidentiary hearing is needed to prove those assertions. *Id.*

■ A petitioner on writ of habeas corpus will not succeed merely because the prosecutors' actions "were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). Rather, we must determine whether the prosecutor's actions " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.,* citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

■ With this standard in mind, we turn to the petitioner's contention that federal findings are necessary to determine whether prosecutorial misconduct occurred. Todaro alleges in his petition that his constitutional rights were violated when the Commonwealth called Kinsey as a witness knowing that he would assert his fifth amendment privilege against self-incrimination and that the circumstances of Kinsey's appearance on and excusal from the witness stand denied Todaro his constitutional right to a fair trial. Todaro further contends that the prosecution missed no opportunity to put Kinsey's name before the jury; that virtually every witness for the Commonwealth was asked whether s/he knew Kinsey or some other question involving him; and that the inferences from this testimony added critical weight to the prosecution's case in a form not subject to cross-examination. Thus, he argues that in the face of these circumstances the trial court did not fully develop material facts at the hearing to determine whether the prosecution called Kinsey knowing of his intent to invoke the fifth amendment. Therefore, Todaro argues that the fact-finding procedure employed by the court at side-bar did

not adequately afford him a full and fair hearing as provided by 28 U.S.C. § 2254(d)(6). He concludes that under these circumstances the district court erred in not granting him an evidentiary hearing when it held irrelevant the prosecution's knowledge of Kinsey's anticipated invocation of his fifth amendment right.

Todaro, referring to an analysis in *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), concerning whether reversible error is invariably committed whenever a witness claims his privilege not to answer, argues that prosecutorial misconduct may occur "when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege," *id.* at 186, 83 S.Ct. at 1154–55, and that in the circumstances of a given case, inferences from a witness' refusal to answer may add critical weight to the prosecution's case in a form not subject to cross-examination. *Namet*, however, did not involve a state prisoner's writ of habeas corpus, but a direct appeal from a conviction. Moreover, the Court rejected those arguments in *Namet* even though counsel for the witness had announced to the Government that his clients would invoke the testimonial privilege if questioned. The Court observed that "the prosecutor need not accept at face value every asserted claim of privilege, no matter how frivolous." *Id.* at 188, 83 S.Ct. at 1155. The Court also observed, of significance to these proceedings, that the case before it was not one "in which a witness' refusal to testify is the only source, or even the chief source, of the inference that the witness engaged in criminal activity with the defendant." *Id.* at 189, 83 S.Ct. at 1156.

In this case, the prosecutor gave a detailed statement regarding his meeting with the defendant which took place in the presence of Deputy Sheriff Will and Deputy Sheriff Kormanik. The prosecutor represented to the court that when this case was scheduled for trial, Kinsey was in jail in another county and the Commonwealth petitioned for his return. He was not returned until the day before trial when the assistant district attorney then saw him. Their meeting was cordial and Kinsey told him that testifying in the presence of the defendant would not pose any problem for him. This statement is not contradicted by any reliable evidence. Defense counsel has never claimed that Kinsey informed him prior to trial that he would not testify.[1] Indeed, the defense counsel himself asked the prosecutor whether Kinsey was going to testify. Neither do we have an affidavit of Kinsey stating that he informed anyone prior to trial of his decision not to testify. It is only the defendant himself who, predictably, alleges that his counsel informed the prosecution of Kinsey's decision to invoke the testimonial privilege. Under these circumstances, we hold that the state trial court's fact-finding procedure in which it determined that the prosecutor did not engage in misconduct afforded the defendant a "full, fair, and adequate hearing." 28 U.S.C. § 2254(d)(6).

■ Todaro also contends that the district court erred in not granting him an evidentiary hearing to determine the correctness of the trial court's finding that the jury did not overhear Kinsey's invocation of his fifth amendment right. The state trial court made a contemporaneous factual determination that the defendant suffered *no* prejudice from Kinsey's brief appearance on the witness stand. The record reveals the following colloquy:

> Mr. Kinsey: I'd like to plead the fifth amendment.
>
> The Court: What?
>
> Mr. Kinsey: I'd like to plead the fifth amendment. I don't want to testify.

---

1. Counsel for the defense points only to the opinion of the Pennsylvania Supreme Court as evidence that the prosecuting attorney had knowledge of Kinsey's plan to invoke his fifth amendment privilege prior to trial. *See Commonwealth v. Todaro*, 569 A.2d 333, 334 (counsel for Todaro complained at side-bar of prose- cutor's prior knowledge). However, the record reveals that defense counsel made no such statement. *See* supra, at 1081. Moreover, defense counsel does not ·presently allege that he told the prosecuting attorney that Kinsey would not testify.

The Court: You don't?

Mr. Kinsey: No.

The Court: Will counsel come up, please. (SIDE–BAR)

The Court: This man, Mr. Kinsey, has just told me that he wants to plead the Fifth; he does not want to testify.

Mr. Yelovich: He can't plead the Fifth. He's already pleaded guilty.

The Court: Oh, he's already pleaded guilty. But has he been sentenced?

Mr. Baca: No, he hasn't.

The Court: Isn't that his right?

Mr. Yelovich: I don't know. I haven't checked that.

The court recessed the trial for twenty minutes and when it resumed, the following occurred:

(MR. KINSEY APPROACHED SIDE–BAR)

The Court: Mr. Kinsey, you're [sic] request is granted. You will not have to testify. You may now go back to the jail with the Sheriff.

(MR. KINSEY LEFT THE COURT-ROOM)

Mr. Baca: Your Honor, may we approach the Bench?

(SIDE–BAR)

Mr. Baca: Your Honor, on the basis of the Commonwealth calling Mr. Kinsey to the stand and him being released as such based on his Fifth Amendment request, I would like to move for a mistrial in this case because it has prejudiced the defendant to have Mr. Kinsey go off without testifying.

The Court: Well, I would like the record to show that the witness's request was made quietly to the Judge. It was not announced out loud in the Courtroom, and there's no reason to think that the jury heard it. It's true the jury saw him called to the stand and then released, but there's been no explanation. The District Attorney has also told us, not on the record yet, that the man told him he was going to testify. So he was surprised at the request. Am I correct, Mr. Yelovich?

Mr. Yelovich: Right. That's right, Judge.

The Court: I think under these circumstances there's no prejudice in fact. If he had—if this request had been made out loud, you'd have another matter. Now, I suppose you think you're prejudiced anyway merely by the appearance of things.

Mr. Baca: Yes, Your Honor.

The trial judge found as a fact that the jury did not hear Kinsey's request. Although Kinsey stated his request twice, the judge did not hear him the first time and neither counsel heard it at all. Only the court stenographer heard the request both times, but the stenographer invariably sits in proximity to the witness. The jury did see Kinsey take the stand, and following a short recess called for the purpose of discussing "a question of law that was not anticipated," leave the courtroom without any other explanation. This occurrence was, at most, puzzling to the jury. In fact, defense counsel Baca, in moving for a mistrial, made no complaint that the jury had overheard the colloquy or Kinsey's invocation of the fifth amendment. On the contrary, the basis of his motion was "because it ha[d] prejudiced the defendant to have Mr. Kinsey go off without testifying." This brief incident could hardly be said to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). We therefore conclude that the district court committed no error in denying Todaro an evidentiary hearing.

Neither do we find a violation of the petitioner's sixth amendment right to an adequate opportunity for cross-examination. Although we acknowledge the potential for a jury to draw impermissible inferences from a co-conspirator's brief, unexplained appearance on the witness stand, to be addressable on a writ of habeas corpus, the " 'inferences from a witness' refusal to answer [must have] added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.' " *Douglas v. Alabama,* 380 U.S. 415, 420, 85 S.Ct.

1074, 1077, 13 L.Ed.2d 934 (1965) (quoting *Namet v. United States,* 373 U.S. 179, 187, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278). The facts in this case are quite different than in *Douglas,* where the prosecutor read the witness' entire confession, pausing after every few sentences to ask the witness in the presence of the jury, "Did you make that statement?" upon which the witness continually asserted the fifth amendment privilege, and where the alleged statements constituted the only direct evidence of the defendant's guilt and thus constituted a fundamental part of the prosecution's case.

The petitioner's argument here is highly speculative in the absence of a showing that Kinsey's brief appearance added critical weight to the prosecution's case in a form not subject to cross-examination. Moreover, nothing in this case presents the issue of whether Todaro would have been entitled to instructions or other curative devices had he requested them. As far as we have been able to determine, no such requests were made. Further, the argument has little substance in face of the independent, overwhelming evidence of guilt adduced by the prosecution. Officers Blasko and Marker testified that when they arrested Kinsey and Todaro, they found in their vehicle guns, rifles, ammunition, and other suspicious property later identified by the owners who testified at trial as having been stolen. The fruits of four recent burglaries and related offenses that occurred in the same area were found in the vehicle. Todaro attempted to conceal his identity by giving an incorrect name to the police, but Officer Marker recognized and identified him, having known Todaro from a previous experience. This evidence, taken together and viewed in the light most favorable to the Commonwealth, sufficiently established Todaro's guilt.

### III.

For the foregoing reasons, we conclude that the trial court's finding that the defendant suffered no prejudice in fact is entitled to the statutory presumption of correctness. Accordingly, the district court committed no error in denying Todaro's petition for a writ of habeas corpus without an evidentiary hearing. The judgment of the district court will be affirmed.

MANSMANN, Circuit Judge, dissenting.

While I have no argument with the majority's statement of the facts of this case or its articulation of the applicable law, I dissent because I believe that the law, when applied to these facts, requires that an evidentiary hearing be held with respect to the issue of prejudice.

While Todaro's appellate brief focuses exclusively on the prosecutor's alleged knowledge that Larry Kinsey would invoke his fifth amendment rights, the thrust of the petition is, as the district court's opinion makes clear, that Todaro was prejudiced by the totality of the circumstances surrounding Kinsey's appearance on the stand. The state trial court concluded that there was no prejudice and those reviewing this conclusion have deferred to this finding.

Having reviewed the record in this case, I am convinced that the district court, instead of deferring to the state trial court's conclusions with respect to prejudice, should have undertaken an independent analysis of the issue of prejudice and should have conducted an evidentiary hearing in order to flesh out the factual ambiguities underlying Todaro's claim of prejudice.

In reaching this conclusion I am mindful of the role of the federal courts in evaluating the habeas claims of state prisoners.

> Before a federal court may overturn a conviction resulting from a state trial ..., it must be established not merely that the [state action] is undesirable, erroneous, or even "universally condemned" but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

*Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

If, as Todaro alleges, the prosecutor called Albert Kinsey to the stand knowing that he would invoke the fifth amendment, Todaro may, under the holding of *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151,

10 L.Ed.2d 278 (1963), have a colorable constitutional claim. Under *Namet*, reversible "error may be based upon a concept of prosecutorial misconduct, when the government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege" or where, "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination and thus unfairly prejudiced the defendant." *Id.* at 186–87, 83 S.Ct. at 1154–55. The principles articulated in *Namet* were "elevated to a constitutional plane in *Douglas v. Alabama*, 380 U.S. 415 [85 S.Ct. 1074, 13 L.Ed.2d 934] (1964)." *Ziegler v. Callahan*, 659 F.2d 254, 272 n. 12 (1st Cir.1980).

Todaro relies on the second *Namet* prong in claiming a violation of his constitutional rights. He argues that in repeatedly referring to Kinsey in eliciting testimony from prosecution witnesses, "the assistant district attorney missed no opportunity to have Kinsey's name put before the jury." These references, coupled with the prosecutor calling Kinsey to the stand and Kinsey's declining to testify, especially if the prosecutor *knew* that Kinsey would invoke the fifth amendment, "added critical weight to the prosecution's case in a form not subject to cross-examination...." *Namet*, 373 U.S. at 187, 83 S.Ct. at 1155.

In his petition, Todaro states that in January, 1986 counsel for Todaro informed the prosecutor that Kinsey would not testify against Todaro in this case. Todaro also states that in March, 1986 Kinsey informed Todaro's counsel that he would not testify against Todaro. Finally, Todaro avers, contrary to the prosecutor's assertion, that Kinsey notified the prosecutor *on the day prior to trial* that he did not wish to testify against Todaro. The district court did not explore these allegations but apparently credited the prosecutor's statement that Kinsey had told him, on the afternoon prior to trial, that he *would* testify. The district court accepted the prosecutor's

statement despite the fact that, when questioned about the same conversation with Kinsey, the prosecutor did not seem at all certain that Kinsey would testify. During the examination of Trooper Bee, the following exchange took place:

Mr. Baca: Do you intend to call Kinsey?

Mr. Yelovich: Sure. He's in the jail. I talked to him yesterday.

Mr. Baca: Is he going to testify?

Mr. Yelovich: I think so. I'm not going to rely on him. I don't know what he's going to say.[1]

Under these circumstances, I am unable to say either that the prosecutor did not make "a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege" or that it is clear that "inferences from a witness' refusal to answer [did not add] critical weight to the prosecution's case in a form not subject to cross-examination and this unfairly prejudiced [Todaro]." *Namet* at 186–87, 83 S.Ct. at 1154–55.

In evaluating the events surrounding Kinsey's appearance on the stand, the state trial court concluded that a declaration of a mistrial or other corrective action was not necessary because the jury did not hear Kinsey invoke the fifth amendment and, therefore, Todaro could not have been prejudiced. In reaching the conclusion that Kinsey's refusal to testify had not been overheard by the jury, the court relied exclusively on counsel's statements that *they* had not heard Kinsey. Despite the fact that the court reporter was able to hear and record all of Kinsey's statements with no apparent problem, the jury was never polled. The court dismissed Kinsey, apparently within the hearing of the jury, with the following words:

The Court: Mr. Kinsey, you're [sic] request is granted. You will not have to testify. You may now go back to the jail with the Sheriff.

The district court, considering the totality of these circumstances, deferred to the

---

1. On the basis of this exchange, the state trial court should, arguably, have examined Kinsey out of the presence of the jury in order to

determine whether he was, in fact, prepared to testify.

state trial court's conclusion with respect to prejudice despite the fact that the issue of prejudice was never fully evaluated by the state trial court. The prejudice analysis was skeletal at best and was undertaken without reference to any articulated legal standard. Moreover, the factual underpinnings of the claim of prejudice were given only cursory attention. The prosecutor's equivocation and Todaro's statements regarding whether the prosecutor knew that Kinsey would refuse to testify were not addressed and no inquiry was made as to what the jury actually heard Kinsey say. What questioning there was did not go far enough; the trial court stopped short of asking those questions which might well have established prejudice.

Under these circumstances, I believe that it was incumbent upon the district court to do more than apply the presumption of correctness embodied in 28 U.S.C. § 2254(d) to the state trial court's finding that Todaro did not suffer any prejudice. The case-law makes clear that the section 2254 presumption does not apply where it appears that the material facts were not adequately developed in the state proceeding or where the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing.[2] In those circumstances, an evidentiary hearing is required. *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); *Smith v. Freeman,* 892 F.2d 331, 338–39 (3d Cir. 1989); *Sullivan v. Cuyler,* 723 F.2d 1077, 1084 (3d Cir.1983).

> It is our responsibility to examine the findings of the state [court] to determine if they are adequate to support the presumption of correctness under § 2254(d). These findings must be sufficient to enable the district court to fulfill its obligation to determine that they are supported by the evidence and that the correct standards of law were applied.

*Fowler v. Jago,* 683 F.2d 983, 988–89 (6th Cir.1982).

I am not convinced that the state trial court's factual findings are reliable or that the court applied the correct legal standard in evaluating Todaro's claim of prejudice. An evidentiary hearing is required with regard to the disputed factual matters and an independent evaluation must be made of the overall claim of prejudice.

It may be that even if the outstanding factual questions were not resolved favorably to Todaro, Todaro still would have a viable claim of prejudice. The danger of "guilt by association" inherent in a case involving a co-conspirator's assertion of the fifth amendment privilege is obvious. There is a strong argument that the danger of "guilt by association" was present in this case even if it is determined that the jury did not overhear Kinsey's assertion of the fifth amendment privilege. At the time that Kinsey was called to the stand and excused without testifying, the jury was thoroughly familiar with Kinsey and his alleged role in the case. Even though Kinsey did not testify, the jury was made aware that Kinsey was in jail and may well have used Kinsey's guilt as substantive evidence against Todaro or may have inferred that Kinsey's testimony would have implicated Todaro. The likelihood that Kinsey's appearance was prejudicial is increased by the court's failure to explain Kinsey's dismissal or to offer any cautionary instruction. These are matters which the district court should have addressed.

On the record as it stands, I am unable to say that Todaro was not deprived of "fundamental fairness in his criminal trial," *Bisaccia v. Attorney General of the State of N.J.,* 623 F.2d 307, 312 (3d Cir. 1980), and that his due process rights were not abridged. I would, therefore, vacate the order of the district court and remand this matter with instructions that an evidentiary hearing be held in the context of an evaluation of the overall claim of prejudice.

---

2. In its brief of but a few paragraphs the Commonwealth argues simply that the state trial court's conclusions are entitled to deference.

The Commonwealth does not address the adequacy of the state factfinding procedure.