

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-30-2004

# Sistrunk v. Dragovich

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3949

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Sistrunk v. Dragovich" (2004). *2004 Decisions.* Paper 903.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/903

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3949
_____

EDWARD SISTRUNK
a/k/a Omar Askia Ali

v.

*MARTIN DRAGOVICH, SUPERINTENDENT, SCI CHESTER;
ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA;
THE DISTRICT ATTORNEY OF PHILADELPHIA COUNTY

Edward Sistrunk, Appellant

*(Amended - See Clerk's Order dated 11/6/03)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 90-cv-01415)
District Judge:  The Honorable Marvin Katz

_____

Submitted Under Third Circuit LAR 34.1(a)
March 11, 2004

BEFORE: SLOVITER and NYGAARD, Circuit Judges, and SHADUR*, District Judge.

*Honorable Milton I. Shadur, United States District Judge for the Northern District of
 Illinois, sitting by designation.

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

In this appeal from the District Court's denial of his petition for a writ of habeas corpus, Edward Sistrunk[1] raises two issues. Taken verbatim from his brief they are:

> (1) Does the statutory requirement that a habeas corpus petitioner exhaust state remedies before bringing a claim before the federal court require the petitioner, even in defiance of state rules of procedure, to elaborate every fact which supports the showing of a constitutional violation that is later presented on habeas corpus to the federal courts?
>
> (2) Was the petitioner-appellant deprived of liberty without due process of law by prosecutorial misconduct in closing argument at his 1981 retrial in the Philadelphia Court of Common Pleas on robbery and murder charges?

_____

1. Since the inception of this case the appellant has changed his name to Omar Askia Ali. For the sake of consistency, we will refer to the appellant as Sistrunk, as did the District Court.

Appellant's Br. at 2.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because Sistrunk's first issue is controlled by the law of the case and the second is without merit, we will affirm.

## I.

This Court has previously addressed Sistrunk's petition for a writ of habeas corpus. *Sistrunk v. McCullough*, 159 F.3d 1353 (3d Cir. 1998) (Table) ("*Sistrunk I*"). *Sistrunk I* provides a thorough summary of the procedural posture and factual history of this case up through *Sistrunk I*'s remand to the District Court and, because we write for only the parties, we will not rehash this rather lengthy history here. On remand from *Sistrunk I*, the District Court adopted the report and recommendation of the Magistrate Judge, which found that (1) Sistrunk's claim of prosecutorial misconduct was limited to only those twelve statements he presented to the Pennsylvania Supreme Court, and (2) none of those statements, nor their cumulative effect, rendered Sistrunk's trial unfair or denied him due process.[2] Sistrunk challenges both of these conclusions.

## A.

The Magistrate Judge was correct in concluding that Sistrunk was limited to arguing the impropriety of only those twelve statements he presented to the Pennsylvania

---

2. The Magistrate Judge actually filed two reports, the first addressing the merits of Sistrunk's Petition and the second addressing the effect of *Wenger v. Frank*, 266 F.3d 218 (3d Cir. 2001).

3

Supreme Court. In *Sistrunk I*, this Court stated, "We agree with the Commonwealth that Sistrunk's general allegations [of prosecutorial misconduct throughout the trial] are insufficient to have put before the [Pennsylvania] Supreme Court any statements other than those from the prosecution's closing argument quoted in the petition for allowance of appeal." App. at 37a. The Magistrate Judge's report and recommendation properly relied on this conclusion in limiting his review of Sistrunk's petition because this conclusion was, and is, the law of this case.

Under the law of the case doctrine, "once an issue has been decided, parties may not relitigate that issue in the same case." *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n.7 (3d Cir. 2003) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 616 n.4 (3d Cir. 1998)). Sistrunk admits that the decision in *Sistrunk I* is law of the case on this issue, but argues that decision was clearly erroneous and works a manifest injustice. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). Therefore, according to Sistrunk, the law of the case doctrine does not apply. We disagree. *Sistrunk I*'s decision on this point was well reasoned and has recently been reaffirmed by this Court. *Moore v. Morton*, 255 F.3d 95, 103 n.7 (3d Cir. 2001) (holding that the factual predicates of a claim of prosecutorial misconduct must be fairly presented to the state courts in order to avoid procedural default). The District Court was correct in approving the Magistrate

4

Judge's report and recommendation that dealt only with those twelve statements that Sistrunk presented to the Pennsylvania Supreme Court.[3]

B.

The twelve statements presented by Sistrunk and addressed by the Magistrate Judge all came from the prosecutor's closing argument and are:

(1)   "The presumption of innocence means just that.  It is a cloak to protect the truly innocent.  It is not a shield behind which the guilty can hide."

(2)   "The Commonwealth is unable to recreate, to bring the Dubrow's Furniture Store at 4th & South into this courtroom, so the Commonwealth will ask you to do this.  The Commonwealth will ask you to . . . take yourselves on January 4, 1971, into Dubrow's Furniture Store.  Walk through that door.  Walk through with the people who appeared before you, what was left of those people who appeared before you, because Alton Barker can never appear before you."

---

3.   Sistrunk also briefly argues that our decision in *Wenger*, 266 F.3d at 218 was incorrect and that Pennsylvania's recent Judicial Order 218, *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Jud.Admin.Dkt. No. 1 (Pa. May 9, 2000), should apply retroactively to relieve Sistrunk of his obligation to file for allocatur in order to exhaust his state remedies. Under our procedure, *Wenger* is binding on this Court absent en banc review of the decision.  Third Circuit IOP 9.1.

(3)     "[A]nd Alton Barker was alive and well that day and pursuing his livelihood under the name he received from his parents and which he transferred to his wife of nine years."

(4)     "I ask you, ladies and gentlemen, that you not be fooled.  You heard testimony in a very unusual typed [sic] of homicide case.  The star witness in the case, if we want to talk star witnesses, is Alton Barker, but that star witness has got lips that are forever sealed to any of us."

(5)     "Now Audrey DiMeo, and I am sure, Audrey DiMeo, that she goes to bed at night just like everybody else does and I am sure that when she hears a creak anywhere around her house I am sure she gets a little bit nervous."

(6)     "[S]he [Audrey DiMeo] told you, Poor Mr. Wagenheim didn't die as a result of Dubrow's, thank God, he died thereafter . . ."

(7)     "[D]id [Roseann Sacchetti] tell you 'Edward Sistrunk is the man who interrupted the birth of my child with a nightmare, to see his fact . . ."

(8)     "This is a professionally planned job."

(9)     "[I]f these witnesses, if these people from Dubrow's did such a lousy job, and if their testimony stunk to high heaven, why, why put on defense witnesses at all?"

6

(10) "Alton Barker can never tell us who fired the fatal shot in Alton Barker . . ."

(11) "Walk toward [the defendants] just like Mr. Gurby walked toward them . . . Tell [them] whether that fooled you at all. Tell both of these defendants, and by your telling both of them tell Alton Barker, Tell his widow here in the courtroom . . . Tell it to Alton Barker."

(12) "[Defendants] take [sic] from a lady who is perfectly happy with her name her husband."

App. at 12a-13a.

In order to show that these statements denied him due process, Sistrunk was required to meet a very high burden. He had to show not just that the prosecutor's statements "were undesirable or even universally condemned" but that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Todaro v. Fulcomer*, 944 F.2d 1079, 1082 (3d Cir. 1991) (citations and quotation marks omitted). We exercise *de novo* review over District Court's decision that Sistrunk failed to meet this burden. *Orban v. Vaughn*, 123 F.3d 727, 729 (3d Cir. 1997).

In his brief, Sistrunk stresses that these twelve statements must be analyzed in conjunction with other misconduct that he alleges occurred during the trial. Based on our analysis regarding the law of the case doctrine, we will follow *Sistrunk I* and review

7

only those twelve statements that Sistrunk exhausted in state court. Sistrunk's arguments regarding these statements break down into four categories of misconduct.

First, Sistrunk argues that statements (3) and (12), as quoted above, denied him due process because they were intended to bias the jury against Sistrunk based on his religion.[4] We disagree for two reasons. Sistrunk admits that the issue of the Muslim practice of changing one's name was introduced into the trial by his co-defendant. The record further discloses that on direct examination, at least one defense witness offered detailed testimony about the Muslim practice of changing one's name and that the prosecution cross-examined this witness in an attempt to show that Sistrunk's co-defendant's various aliases were not the result of this Muslim practice. Because this topic was introduced not by the prosecution, but by Sistrunk's co-defendant, the prosecution's cryptic reference to it during closing arguments did not render Sistrunk's trial unfair.[5] *See United States v. Tyler*, 281 F.3d 84, 99 (3d Cir. 2002) (acknowledging that the prosecution can properly refer to issues that were introduced by the defendant during

---

4.    Sistrunk briefly argues that his burden in establishing that these statements violated his rights is lower because they represent a denial of his First Amendment rights. Sistrunk never raised this argument in the state courts and, therefore, it is not properly before us. *Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989).

5.    Sistrunk mistakenly argues that the invited response doctrine is at issue. *See Darden v. Wainwright*, 477 U.S. 168, 178-82 (1986) (explaining that a prosecutor's improper comments during summation may be acceptable if invited by improper statements by defense counsel). We do not rely on that doctrine because we do not find that the prosecutor's commenting on this area was improper.

trial). The use of aliases was also an issue in this case and the prosecutor properly addressed the Muslim practice of changing one's name in the context of determining whether Sistrunk's co-defendant's various names were a result of this practice. For these two reasons, statements (3) and (12) did not deny Sistrunk due process.

Second, Sistrunk argues that statement (1) rendered his trial unfair by denying him the presumption of innocence. We agree with the Magistrate Judge that this statement was a proper response to Sistrunk's counsel's statements regarding the presumption of innocence, was a fair statement regarding the evidence the prosecution presented to try to overcome the presumption, and that any improper aspect of the comment was mitigated by the trial court's subsequent jury instructions regarding the presumption. For these reasons, statement (1) did not deny Sistrunk his right to due process.

Third, Sistrunk argues that statement (9) was improper because it "attacked the very idea of presenting a defense." Appellant's Br. at 32. In fact, this statement was a proper response to defense counsel's argument that even without a defense the prosecution's identification evidence was so weak that the defendants should be found not guilty. There was nothing improper about the prosecution responding to this line of argument.

Fourth, Sistrunk argues that statements (2), (4), (5), (6), (7), (10) and (11) were improper because they were emotionally charged. Statements (2), (4), (6), (7), (10)

9

and (11) were each directly related to evidence introduced at trial and were proper arguments regarding that evidence. Statement (5), though not directly related to any evidence that Audrey DiMeo actually gets nervous when she hears creaks in her house at night, was a reasonable inference and was insufficient to render Sistrunk's trial unfair.

The only remaining statement, number (8) as quoted above, was not referred to by Sistrunk in his brief. Regardless of any waiver problem this presents, that statement was also proper because it was based on evidence supporting the inference that this crime was planned, and was in response to defense counsel's arguments regarding the absence of fingerprints at the crime scene.

After reviewing both the individual and cumulative effect of these twelve statements, we conclude that they did not deprive Sistrunk of a fair trial[6]. Therefore, we will affirm the District Court's order adopting the Magistrate Judge's report and recommendation.

_____

TO THE CLERK:

_____

6. This conclusion should not be read by the government as any type of condonation of its actions. To the contrary, we find several of the prosecutor's remarks during her closing to be the type of "undesirable or even universally condemned" actions that, though not depriving Sistrunk of a fair trial, give us pause. *Todaro,* 944 F.2d at 1082 (citations and quotation marks omitted).

10