J-S39011-18

2018 PA Super 337

COMMONWEALTH OF PENNSYLVANIA

Appellee

v.

LUIS FELIX QUINONES

Appellant

IN THE SUPERIOR COURT
OF PENNSYLVANIA

No. 1528 MDA 2017

Appeal from the Judgment of Sentence imposed August 28, 2017
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0007047-2016

BEFORE:  STABILE, MURRAY, and MUSMANNO, JJ.

OPINION BY STABILE, J.:                     **FILED DECEMBER 11, 2018**

Appellant, Luis Felix Quinones, appeals from the judgment of sentence imposed on August 28, 2017 in the Court of Common Pleas of York County following Appellant's convictions of firearms not to be carried without a license, abuse of corpse, conspiracy to commit abuse of corpse, possession of a controlled substance with intent to deliver ("PWID"), and possession of drug paraphernalia.[1]  Appellant contends the trial court erred by permitting the Commonwealth to amend the initial information to include charges of PWID

---

[1] 18 Pa.C.S.A. § 6106(a)(1), § 5510, § 903(a)-§ 5510, 35 P.S. § 780-113(a)(30) and § 780-113(a)(32), respectively.  The jury acquitted Appellant of possession of firearm prohibited, tampering with or fabricating physical evidence, and possession of instruments of crime.  18 Pa.C.S.A. § 6105(a)(1), § 4910(a) and § 907(a), respectively.

and possession of drug paraphernalia. We agree and therefore vacate Appellant's judgment of sentence.

The trial court provided an abbreviated synopsis of this case, supported by references to notes of testimony from Appellant's four-day jury trial, as follows:

> Kevin Brightful ("Brightful"), who shot the victim in this case, testified. Brightful testified that Appellant was in the business of selling heroin, including around the time the shooting occurred. The day before the shooting, Brightful and Appellant went to a storage shed to get a few handguns. They had gotten these handguns because of an incident the night before, [of] which Appellant was aware.
>
> Brightful, who does not have a license to carry a handgun, put the handguns in the wheel well, which was under the floor of the Honda Odyssey, and they drove the handguns back to Brightful's house. Appellant knew Brightful carried the guns from the wheel well to the house. At the house, Brightful kept one of the handguns on top of his closet, and he kept the other in his pocket.
>
> On August 12, 2016, the victim in the case broke into [] Brightful's home with a gun, and the victim was shot and killed by [] Brightful as a result. Appellant was present at the time. After the victim was killed, Appellant picked up the victim's gun from the couch and told Brightful he wanted to keep it. Immediately afterwards, Brightful told him not to keep it, taking the gun away from Appellant.
>
> Then, Brightful and Appellant moved the body from Brightful's home into the Honda Odyssey van. They drove to a secluded area and disposed of the victim's body on the side of the road. After disposing the body, Brightful drove himself and Appellant back to the storage shed. Five days after the shooting and disposing of the body, police pulled over the same Honda Odyssey van, containing Appellant and Brightful, who were both then arrested. After obtaining a search warrant, police searched the van, and then, police conducted a second search several months later. During the second search, heroin and drug paraphernalia were discovered in the wheel well of the vehicle. The amount of heroin

and the type of drug paraphernalia that were discovered were consistent with selling heroin in York County.

Rule 1925(a) Opinion, 1/2/18, at 2-4 (references to notes of testimony omitted).

Our review of the trial transcripts does not cause us to challenge the trial court's summary of the evidence. Nevertheless, we believe additional information is required to put Appellant's allegation of trial court error in context.

Commonwealth witness Brightful acknowledged he was facing numerous charges as a result of the August 2016 events, and voiced his hope that his willingness to testify truthfully at trial would be viewed positively when he faced sentencing. Also important for context is the fact that Brightful made his living by selling marijuana in York County, netting him approximately $2,000 per week. N.T., Trial, at 523-24. His clientele was not the same as Appellant's. *Id.* at 528.

Brightful's girlfriend, with whom Brightful lived, also testified at trial. She stated that on the night before the shooting, a black man with a gun knocked on either the back door or the kitchen window of the apartment where she and Brightful lived with their infant daughter. The armed man gestured for her to come to the back door. Instead, she ran to the front of the apartment. *Id.* at 118-21. She called Brightful who was not home at the time. Brightful told her to leave the home. She did so, with a friend who took

her and her daughter to a nearby Motel 6. She spent the night there and was joined by Brightful. *Id.* at 122-25.

The next day, Brightful—accompanied by Appellant—retrieved handguns, including the one he used to shoot the victim, from his storage shed and brought them to the apartment. That night, Brightful slept with one of the two handguns on the floor next to his side of the bad. He placed the other gun on top of his closet. *Id.* at 551, 553.

Appellant was a resident of Brooklyn, New York. Transcript of Recorded Interview, 8/17/16, at 7.[2] However, testimony indicated that he often slept in the living room of Brightful's York apartment, as was the case on the night when the victim broke into the apartment and was shot by Brightful. N.T., Trial, at 548, 558. Appellant did not have a gun of his own in Brightful's apartment. *Id.* at 555-56, 565.

Following his arrest on August 17, 2016, Appellant was charged with various firearms violations as well as abuse of corpse and conspiracy to commit abuse of corpse. No drug-related charges were included in the original information charging Appellant.

_____

[2] Appellant gave a statement to police on August 17, 2016. A redacted version of that videotaped statement was played for the jury. *See* N.T., Trial, at 473-75. A redacted transcript of the recorded interview was provided to the jurors when the video was played. The interview was made part of the trial record, although it was not separately transcribed during trial. *Id.*

A second search of the Honda Odyssey, conducted five months later on January 17, 2017, yielded heroin and drug paraphernalia as well as a bullet from one of the guns Brightful retrieved from the storage shed and stored in the wheel well. According to Brightful, it was "an accident" that the bullet was left there. N.T., Trial, at 529-30. Although he could explain the presence of the bullet, Brightful stated he was unaware of the presence of heroin in the wheel well. *Id.* at 528-29.

No testimony was offered to explain how or why the second search came about. In fact, a sidebar discussion between the trial judge and counsel suggested that the jury was not to hear why the police conducted a second search. *Id.* at 214-15. However, the motion to add drug charges to the information reveals that Brightful provided information to the Commonwealth about Appellant's alleged heroin business. Motion to Add Charges, 4/24/17, at ¶ 4. The subsequent search yielded suspected heroin. *Id.* at ¶ 5. Despite that fact, Brightful testified at trial that he did not know about the heroin in the Odyssey and did not know how it got there. N.T., Trial, at 528, 620.[3]

In its procedural history, the trial court explained:

---

[3] Brightful's acknowledgement of a bullet being "accidently" left behind in the wheel well when he and Appellant returned the guns to the storage shed calls into question his testimony that he did not know of the heroin in the wheel well or how it got there. At least two scenarios are plausible: (1) the drugs retrieved in January 2017 from that wheel well were not present when Brightful returned the guns to the shed after the shooting, or (2) the drugs and drug paraphernalia were present in that same wheel well and Brightful simply did not notice them when he removed the guns.

> On April 24, 2017, the Commonwealth filed a motion to add charges, and, following a hearing on June 2, 2017, the court granted the motion for leave to amend [the] information, which was amended on June 8, 2017. On July 21, 2017, a jury found Appellant guilty of [the crimes enumerated above and not guilty of the remaining charges]. Appellant was sentenced on August 28, 2017.

Rule 1925(a) Opinion at 1-2 (some capitalization omitted).

Appellant filed post-sentence motions, which the trial court denied on September 21, 2017. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two issues for our consideration:

> I. Whether the honorable trial court erred in permitting the Commonwealth to amend the information prior to trial to include charges of possession with intent to deliver heroin and possession of drug paraphernalia?
>
> II. Whether the evidence was insufficient [to] support the jury verdict as to firearms not to be carried without a license in that the evidence was insufficient to establish that Appellant possessed a firearm and that the weapon possessed was operable?

Appellant's Brief at 4.

In Appellant's first issue, he argues the trial court erred by permitting the Commonwealth to amend the original information in violation of Pa.R.Crim.P. 564, adding drug charges for PWID and possession of paraphernalia. The version of Rule 564 in effect at all times relevant provided:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, **provided the information as amended does not charge an additional or**

> **different offense.** Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (emphasis added).[4]

In **Commonwealth v. Mentzer**, 18 A.3d 1200 (Pa. Super. 2011), this Court recognized:

> "The purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." **Commonwealth v. Sinclair**, 897 A.2d 1218, 1221 (Pa. Super. 2006). "Our courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." **Commonwealth v. Grekis**, 411 Pa. Super. 513, 601 A.2d 1284, [1289] (1992).
>
> As stated in **Sinclair**, when presented with a question concerning the propriety of an amendment, we consider:
>
> > whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the

---

[4] Rule 564 was amended effective December 21, 2017 "to more accurately reflect the interpretation of th[e] rule that has developed since it was first adopted in 1974." Pa.R.Crim.P. 465, *cmt.* (citing, *inter alia*, **Commonwealth v. Brown**, 727 A.2d 541 (Pa. 1999) and **Commonwealth v. Sinclair**, 897 A.2d 1218 (Pa. Super. 2006)). The current rule provides:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amend[ment] is not permitted.

**Sinclair**, 897 A.2d at 1221 (quoting **Commonwealth v. Davalos**, 779 A.2d 1190, 1194 (Pa. Super. 2001), *appeal denied,* 567 Pa. 756, 790 A.2d 1013 (2001) (citation omitted)). Additionally,

in reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basi[c] elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

**Id.**, at 1222.

**Id.** at 1202-03 (brackets omitted from original; alterations added).

In **Commonwealth v. Witmayer**, 144 A.3d 939 (Pa. Super. 2016), this Court stated, "A defendant will be afforded relief when the trial court exercises its discretionary power to allow amendment of the information only if the defendant was prejudiced by the amendment." **Id.** at 947 (citation omitted). The Court instructed:

Factors for a court to consider in determining the existence of prejudice include:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether

the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id.* (citation omitted).

In its motion to add drug-related charges, the Commonwealth noted that Appellant was arraigned on December 2, 2016 on the firearms and abuse of corpse charges outlined above and that the case was scheduled for trial during the July 2017 term of court. Further:

4. Information provided to the Commonwealth by co-defendant Kevin Brightful is that [Appellant] was involved in selling heroin at the time of the instant charges.

5. As a result of a search warrant on a vehicle believed to be occupied by both defendants at the time of their arrest, a substance believed to be heroin was discovered in the trunk.

6. Said substance was submitted for testing at NMS labs.

7. On April 14, 2017, the investigating Trooper, Jeremy Corrie, received an email from Thomas Walsh, Assistant DNA Technical Leader of NMS labs, indicating that [Appellant] was a major source contributor of the DNA swabs collected from three baggies of the suspected heroin.

8. The email has been forwarded to defense counsel as part of discovery, and the report will be forwarded upon receipt.

9. The Commonwealth seeks to amend the current charges to add one count of Possession of Heroin, a controlled substance, with the intent to Deliver (35 P.S. 780-113(30)), and one count of Possession of Drug Paraphernalia (35 P.S. 780-113(32)).

10. [Appellant] will not be prejudiced as a result of this report.

Motion to Add Charges, 4/24/17, at ¶¶ 4-10.

At the June 2, 2017 hearing on the motion, the following exchange took

place between the trial court and Appellant's counsel:

THE COURT:  Did you review the motion?

DEFENSE COUNSEL:  I did, Your Honor.  I would be opposed to it
on the following grounds:

I understand that this is kind [of] a recent development that they
have decided to charge - - make the charge.

THE COURT:  Obviously or you wouldn't be here.

DEFENSE COUNSEL:  I understand that.  You filed the charge of
PWI and paraphernalia.  I am requesting that it not be added as
an additional charge in the instant case, which the person not to
possess abusive corpse [*sic*].  It is not tied to the alleged - - PWI
is not tied into the alleged factual allegation in that case.

THE COURT:  It is concurrent in time and place, correct?

DEFENSE COUNSEL:  I don't know.

THE COURT:  That's how I read the petition within the involved - -
which was involved in this crime which gave the basis for these
charges was found the heroin and took awhile for the lab tests to
come back, which confirmed at least their belief that
circumstantially your client was the person who possessed that
and I guess the weight is what suggests the purpose for it.

DEFENSE COUNSEL:  I understand the weight.

THE COURT:  I mean - -

DEFENSE COUNSEL:  To get to PWI, I think in the instant case
that I make a motion to [sever] it because - -

THE COURT:  Well, I don't.

DEFENSE COUNSEL:  - - because, again, I think the alleged course
of conduct having this charge added would be - -

- 10 -

THE COURT:  Prejudicial.

DEFENSE COUNSEL:  Exactly, Your Honor.  Because then we are getting into allegations my client is dealing drugs, which again as it relates to the instant case - -

THE COURT:  Well, based on that theory.

DEFENSE COUNSEL:  Not that alleged course of conduct.

THE COURT:  Everyone who happens to have a weapon, there is a prejudice and I don't agree with you that the prejudice is overwhelming.  The mere fact that these things occurred contemporaneously, it's sufficient for me to join them.

It's a matter of proof.  Whether or not they can prove what they say, but I am going to grant their motion.  I hear what you are saying.  I appreciate - - I don't think the prejudice is overwhelming.  We have a vast number of cases involving drugs and guns and not very frequently do we have abuse of corp[se] concurrent with that, but I am letting it in.

DEFENSE COUNSEL:  Understood.

PROSECUTOR:  Thank you, Your Honor.

N.T., Argument, 6/2/17, at 2-4.

Addressing the issue in its Rule 1925(a) opinion, the trial court explained:

In the instant case, police pulled over the Honda Odyssey van, containing Appellant and Brightful, and they were arrested for charges associated with the instant case.  This was the same van that was used to transport the victim's body just five days before.  At the time of the shooting, Appellant was a drug dealer for heroin.  The van was searched, and police found heroin and drug paraphernalia in the van.  Therefore, this amendment did not present new facts that were unknown to [Appellant].  Further, given the timeline, the charges were relevant in time and place to the other charges and it did assist in presenting a history of the case.  The amendment did not change the factual scenario

- 11 -

> supporting the charges. Although the defense strategy did not necessarily need to change for the original charges, it did need a strategy for the new charges. Further, the Commonwealth's request was made in April, approximately three months before the trial. There was ample notice and time for preparation for the Defense, and there was no prejudice to [Appellant] as a result.

Rule 1925(a) Opinion, 1/2/18, at 8.

Both this Court and our Supreme Court have examined claims of trial court error for amending an information. For example, in **Witmayer**, this Court concluded that adding sexual misconduct charges from Chester County "did not add any new facts or charges of which [Witmayer] was previously unaware. Both the criminal complaint and affidavit of probable cause detailed acts of abuse occurring in both Chester County and Montgomery County." **Id.**, 144 A.3d at 947. Therefore, the missing phrase, "County of Chester," was "merely a defect in form," **id.** at 948, and the amendment did not violate Rule 564. Similarly, in **Sinclair**, an amendment to include a lower range of BAC was permitted because Sinclair could not demonstrate any prejudice by being charged in a lower range. "Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results." **Sinclair**, 897 A.2d at 1222 (citation omitted).

In contrast, in **Commonwealth v. Brown**, 727 A.2d 541 (Pa. 1999), our Supreme Court did find prejudice when, immediately before trial, charges

were added alleging rape and involuntary deviate sexual intercourse ("IDSI")

with an unconscious person. The Court explained:

> The original information included the charges of Rape and IDSI by forcible compulsion. In order to prove the "forcible compulsion" component of these charges, the Commonwealth was required to establish beyond a reasonable doubt that appellant used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for Rape and/or IDSI by forcible compulsion. The amendment introduced the charges of Rape and IDSI with a person who is unconscious. These latter charges did not require proof by the Commonwealth that force of any sort was employed by the accused. Consequently, the amendment to the information violated Rule [364[5]] by introducing new offenses.

*Id.* at 544 (citation omitted). After determining that the amendment at issue

violated the rule by introducing new offenses, the Court considered whether

Brown was prejudiced by the amendment.

> [B]ased on the original charges, appellant had every reason to expect that the Commonwealth would be attempting to establish that the victim was *conscious* during the sexual encounter. It would be virtually impossible for the Commonwealth to meet its burden of establishing that appellant used physical force, a threat of physical force, or psychological coercion against the victim if the Commonwealth did not first establish that the victim was conscious. Assuming the Commonwealth could establish that the victim was conscious, appellant's primary line of defense would have been that she consented to the encounter. When the Commonwealth shifted the focus of its case to proving that the victim was *unconscious,* the Commonwealth vitiated appellant's primary line of defense, since consent is not a defense to the charges of Rape and/or IDSI with an unconscious person. Therefore, by varying the information at the eleventh hour, the Commonwealth rendered appellant's primary defense a nullity.

---

[5] The rule at issue in **Brown** was Rule 229, which was subsequently renumbered as Rule 564 in 2000.

- 13 -

*Id.* (emphasis in original) (reference to notes of testimony omitted).

Turning to the case before us, it is without question that the amended information charged additional and different offenses. As such, the amended information violates Rule 564 on its face. Therefore, we must consider whether Appellant suffered prejudice as a result. We do so, utilizing the considerations outlined by this Court in **Witmayer**.[6]

As explained above, the original information included firearms charges and charges related to abuse of corpse stemming from events that occurred on August 12, 2016 when Brightful shot and killed the victim. Brightful and Appellant then drove the body to a remote site where it was discovered several days later. The amended information changed the factual scenario supporting the charges, alleging PWID (heroin) and possession of drug paraphernalia. Those charges were added after Appellant's preliminary hearing and after a second search of a vehicle took place five months after his arrest for gun-related charges and abuse of corpse. The trial court believed that "these things occurred contemporaneously," N.T., Argument, 6/2/17, at 4, and determined "the amendment did not present new facts that were unknown to

---

[6] Again, those considerations include "(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation." **Witmayer**, 144 A.3d at 947.

[Appellant]." Rule 1925(a) Opinion, 1/2/18, at 8. Neither of those conclusions is supported by the record. The first of the "prejudice" considerations exists here.

The second through fifth factors also are present. Prior to the second search of the vehicle used to transport the victim's body, there was no suggestion that Appellant was involved in any drug activity. Therefore, new facts were added. Further, the entire factual scenario facing Appellant at trial was not developed during the preliminary hearing, which was held prior to amendment of the information. Moreover, the description of the charges changed drastically with the amendment, taking the case from one of guns and abuse of corpse to one involving drug dealing and drug possession. As a result, a change in defense strategy was necessitated in order to defend against the new charges, which were unrelated to the original charges and painted a different picture of the events that occurred in August 2016.

The final consideration relates to the timing of the Commonwealth's request for amendment and whether Appellant had ample notice to prepare. Unlike *Brown*, where the information was amended "immediately before trial," the motion to add charges here was filed on April 24, 2017 and was argued and granted on June 2, 2017. The information was amended on June 8, 2017, and the trial began approximately five and a half weeks later, on July 17, 2017. We recognize the information was not amended "immediately before trial," as was the case in *Brown*. While the timing of the amendment

might weigh in favor of the Commonwealth, we do not find it dispositive in the case before us.

Here, the amendment occurred well after the preliminary hearing and relatively close to a trial that brought into play drug charges and DNA evidence linking Appellant to possession of heroin with intent to deliver. Neither drug charges nor DNA evidence was at issue with respect to the charges set forth in the original information.

We find compelling Appellant's argument explaining the prejudice resulting from the amendment.

As Appellant argues in his brief:

In the instant case Appellant was charged with offenses which were connected to the disposing of the body of the deceased and allegedly disposing of evidentiary items. The original charges had no connection to or arose out of any alleged drug dealing by the Appellant. The heroin was not even found until January 2017, approximately five months after the Appellant's arrest. The Commonwealth then waited another four months to file the amended charges.

The amended drug charges clearly alleged different facts and events and did not evolve out of the allegations of abuse of corpse and tampering with evidence. The drug charges are materially different from the original charges. The amendments clearly changed the original factual scenario; added new facts to the case not known to the Appellant until approximately one month prior to trial; the new factual scenario was not developed at a preliminary hearing but in fact was not instituted until almost ten months after the Appellant's arrest; a description of the charges clearly changed with the amendments; and clearly prejudiced the Appellant. It should further be noted counsel made a motion to sever at the hearing which was denied.

**The prejudice is more evident as set forth in the argument below concerning relevant evidence. The amendments,**

**which had not[h]ing to do factually or otherwise with the
original charges, allowed the district attorney to argue that
the Appellant was a heroin dealer which had no connection
to the original charges. Allowing the district attorney to
argue that aspect clearly painted the Appellant in an
unfavorable light. The alleged heroin involvement of the
Appellant had no connection whatsoever to the deceased
entering the co-defendant's residence, being shot and
killed, and then the disposing of the body and other
evidence. The amended charges should have been filed in
a separate criminal complaint under a separate offense
tracking number. Appellant submits the sole motivation for
the district attorney to want the amendments was clearly
so Appellant's character could be tarnished as a heroin
dealer. This is especially true given the current climate
regarding heroin in York County and throughout the
Commonwealth. As a result, the trial court erred and
Appellant should be afforded a new trial.**

Appellant's Brief at 11-12 (emphasis added).

Further:

The resulting prejudice to the Appellant is clear. The events which
led to the abuse of corpse and related charges had absolutely no
nexus to the Appellant being a drug dealer. In fact, it was just
unlucky happenstance that Appellant happened to be at his co-
defendant's apartment when the deceased broke in and was shot.
Obviously, had the amendments not been permitted, the district
attorney would have been prohibited [under Pa.R.Crim.P. 404(b)[7]]
from producing evidence of the Appellant being a heroin dealer.
Appellant submits it was a calculated effort by the district attorney
to amend the information so that the highly prejudicial and
inflammatory evidence would be introduced. At the time of the
June 2, 2017 hearing, [Appellant's] counsel was unaware when
the heroin was even found by authorities. There was absolutely
no logical correction [*sic*] between the drugs found and the initial
charges. Again, the amendment emerged independently from
and not from the same factual scenario or circumstances giving
rise to the original charges.

---

[7] Appellant addressed the import and application of Pa.R.Crim.P. 404(b)
(Other Crimes, Wrongs, or Acts) in his brief. Appellant's Brief, at 12-14.

The proper course of conduct if the court was going to permit the amendment was to sever the drug charges and conduct a separate trial on these allegations. Counsel suggested such a remedy at the June 2, 2017 hearing.

*Id.* at 15.

It is apparent even from the Commonwealth's opening statement that the addition of drug-related charges enabled the prosecution to alter its theory of the case and offer a motive for Appellant's actions, causing prejudice to Appellant. While opening statements are not evidence, and the jury was so instructed, the Commonwealth's opening confirms its advancement of the newly-available motive, as reflected in the following passage:

> [] Brightful was engaged in selling marijuana at the time with his cousin Chisholm who was then in jail, and [Appellant] is from New York and had his own business of selling heroin at the time, and th[e] heroin that was found in the Odyssey belonged to [Appellant], and he intended to deliver it to another or others.
>
> Together, they aided one another, and both actively participated in illegally disposing of the body, the guns, and other evidence of the killer. **They did so because of their various criminal enterprises and not wanting the authorities to gain knowledge either of the death or those enterprises**. In short, they were scared of going to jail.

N.T., Trial, at 84-85 (emphases added).

We conclude Appellant was prejudiced by the amendment of the information. Therefore, we vacate Appellant's judgment of sentence and remand for a new trial with instruction to the trial court to sever the charges of PWID and possession of drug paraphernalia from the charges set forth in

the original information.  In light of our disposition of Appellant's first issue, we find his second issue moot.

Judgment of sentence vacated.  Case remanded for further proceedings consistent with this Opinion.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2018