J-A08003-23

2023 PA Super 275

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JERMAINE BELGRAVE | : | |
| Appellant | : | No. 1480 WDA 2021 |

Appeal from the Judgment of Sentence Entered November 19, 2021
In the Court of Common Pleas of Erie County
Criminal Division at No:  CP-25-CR-0001015-2019

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.*

OPINION BY STABILE, J.:                    **FILED: December 28, 2023**

Appellant, Jermaine Belgrave, appeals from his judgment of sentence of 7½-15 years' imprisonment for possession with intent to deliver a controlled substance ("PWID"), reckless endangerment, and carrying firearms without a license.[1]   We affirm Appellant's convictions, but remand for further proceedings to correct Appellant's sentence.

The charges against Appellant arise from a sale of drugs at a hotel in Erie, Pennsylvania on February 9, 2019, that ended in a gunfight.  The Commonwealth presented its evidence at trial through the testimony of Erie police officials and evidence gathered during their investigation.  The evidence demonstrates that on February 7, 2019, four males, including Appellant, drove from Chicago, Illinois to Erie, Pennsylvania.  On the same date, one of the

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §780-113(a)(30), 18 Pa.C.S.A. §§ 2705 and 6106, respectively.

1

four men, Sheldon Morales, rented a room at a Marriott Hotel in Erie with a checkout date of February 9, 2019. The four men, including Appellant, Morales, Baizar, and another man, stayed together in this room.

The hotel's videotape demonstrates that at approximately 5:15 p.m. on February 9, 2019, the four men were parked in a Chevrolet Impala in front of the hotel. Appellant was in the front passenger seat; Baizar was in the backseat. A dark-colored SUV arrived in the parking lot and parked nearby. Baizar and another man exited the Impala and walked toward the SUV. When Baizar attempted to enter the SUV, the SUV's driver exited the vehicle and began shooting at Baizar. Baizar ran away and dropped a package. Appellant reacted to the gunshots by exiting the Impala and firing two shots in the direction of the SUV. Moments later, Appellant was shot and seriously injured.

Appellant and Baizar re-entered the Impala, which then drove away. Subsequently, police stopped the Impala when it was exiting from a parking garage located across from the Marriott. At that time, Baizar was driving the Chevy Impala and Appellant was the front seat passenger. Appellant received treatment for his injuries at a local hospital. The package that Baizar dropped during the gunfight was found to contain 239 grams of heroin.

Appellant was charged with conspiracy to commit PWID and other charges. Baizar was charged with conspiracy to commit PWID. At Appellant's

preliminary hearing, defense counsel contended that the evidence merely showed that Appellant was present at the scene, and that his mere presence did not demonstrate any conspiracy between him and the other occupants of the Impala to commit PWID. N.T., 4/8/19, at 74-75. Appellant was held for court on all charges; Baizar was held for court on the conspiracy charge. In December 2019, Baizar pled guilty to conspiracy and was sentenced to a term of imprisonment.

On the first morning of Appellant's trial, the Commonwealth moved to amend the information to charge Appellant with PWID in lieu of conspiracy to commit PWID. N.T., 6/9/21, at 5. The Commonwealth contended it could prosecute Appellant for PWID under a theory of accomplice liability. *Id.* It asserted that the amendment in charges would not prejudice Appellant because the Commonwealth intended to present the "exact same facts" but simply claim that these facts made Appellant an accomplice rather than a conspirator. *Id.* ("we're saying, instead of saying he's a conspirator, we're saying he's an accomplice"). The charges of accomplice liability and conspiracy were "completely identical," the prosecutor continued, because there was no "functional change" in the charges. *Id.* at 5-6. The prosecutor added that "[o]ftentimes we heard jurors express confusion about the distinction [between these charges] and I have expressed confusion about the actual distinction." *Id.* at 6. Following argument, the court verbally granted

- 3 -

the Commonwealth's motion to amend the charge of conspiracy to commit PWID to PWID.[2]

During trial, the Commonwealth called Baizar as a witness. Prior to Baizar's testimony, outside the presence of the jury, Baizar's counsel indicated that Baizar intended to invoke his privilege against self-incrimination if called to testify. N.T., 6/9/21, at 177-78. The Commonwealth sought and obtained an order granting Baizar immunity.[3] The court informed Baizar, again outside the presence of the jury, that "no testimony, information or other evidence directly or indirectly derived from the testimony of [Baizar during] trial may be used against [him], including on cross-examination . . . The Commonwealth explicitly includes the crime of perjury in this cloak of immunity." *Id.* at 180.

_____

[2] The record does not include an amended information. The Commonwealth advised that it "doesn't even believe we have to file an amended information because the change is so minor." *Id.* at 7. Although this Court frequently refers to possession with intent to deliver as "PWID," in this case, we will refer to the amended charge as "PWID-accomplice liability" in accordance with the theory of criminal liability advanced by the Commonwealth during trial.

[3] The Judiciary Code provides that when "a witness has refused or is likely to refuse to testify . . . on the basis of his privilege against self-incrimination," the district attorney "may request an immunity order from [the trial] judge, and that judge shall issue such an order." 42 Pa.C.S.A. § 5947(b). Following an order of immunity, if the witness refuses to testify on the basis of his privilege against self-incrimination, and the trial court "communicates to the witness [the] immunity order, that witness may not refuse to testify based on his privilege against self-incrimination." 42 Pa.C.S.A. § 5947(c). If the witness fails to comply with the immunity order, he "is guilty of criminal contempt," 42 Pa.C.S.A. § 5947(e), and may also be adjudged in civil contempt . . . until such time as he purges himself of contempt by complying with the order." 42 Pa.C.S.A. § 5937(d).

The court instructed Baizar that he no longer had a Fifth Amendment right not to testify because the court had signed an order of immunity. *Id.* at 178. The court advised Baizar that he could be held in contempt if he failed to comply with the order of immunity. *Id.* at 180. Nevertheless, Baizar continued to state that he was not going to provide testimony. *Id.* at 183-84.

When the jury returned to the courtroom, Baizar was called to the stand by the prosecution. After he stated his name, the prosecutor asked eighteen questions. In response, Baizar either stated that he refused to answer questions or remained silent in response to all eighteen questions by the prosecutor. N.T., 6/9/21, at 185-91. For example, the prosecutor stated:

> Q. You are citizen of Belize? He does not answer. Is it fair to say you are cousins with Mr. Belgrave? No answer. Fair to say that you came to the City of Erie to sell heroin with Mr. Belgrave? Fair to say that that's what you told police during your interview...

*Id.* at 187. At another point, the prosecutor stated:

> Fair to say you gave four separate statements back on February 7th, Mr. Baizar? No answer. Fair to say you answered questions during those statements about what happened on February 7th during this incident. And I'll note no answer. Fair to say that officers attempted to have you perform a lineup of the individuals that robbed you and you didn't want to participate in that because you believe in criminals getting away with crimes? No answer.

*Id.* at 191. The court then asked Baizar whether "[it is] your intent not to answer any questions today?"[4] *Id.* at 185. Baizar answered, "It's my intention not to answer no questions at all." *Id.* At the conclusion of the

---

[4] The court did not inform the jury that Baizar had been granted immunity.

prosecutor's questioning, defense counsel stated that he had no questions for Baizar. The court excused Baizar from the stand without holding him in contempt. The jury did not learn that Baizar was standing on his self-incrimination privilege and that he had been granted immunity.

At the conclusion of trial, the court instructed the jury on the elements of PWID-accomplice liability. N.T., 6/11/21, at 6-7. The jury found Appellant guilty of PWID-accomplice liability, reckless endangerment, and carrying firearms without a license. The jury did not reach a verdict on three charges of aggravated assault and simple assault. On November 19, 2021, the court sentenced Appellant to a term of imprisonment for *conspiracy to commit PWID* and concurrent sentences of imprisonment for reckless endangerment and carrying firearms without a license. Appellant filed a timely appeal to this Court, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

I. Whether or not the trial court erred resulting in prejudice to the Appellant by allowing the Commonwealth to continue questioning the Appellant's co-defendant, Charles Baizar, over objection of the Appellant, when both Mr. Baizar and his attorney made it clear [that] Mr. Baizar would not be answering any questions, notwithstanding the fact that the trial court gave a cautionary instruction to the jury once Mr. Baizar was excused from the witness stand, since the questions posed to Mr. Baizar clearly implicated the Appellant regarding the charge of unlawful delivery of a controlled substance?

II. Whether or not the trial court erred in allowing the Commonwealth to amend the charge of criminal conspiracy to unlawfully deliver a controlled substance to the charge of unlawful delivery of a controlled substance, on the day trial was to commence, thus resulting in prejudice to the Appellant, since the

elements or defenses to the amended charge, unlawful delivery of a controlled substance, are materially different [from] the elements or defenses to the charge of criminal conspiracy to unlawfully deliver a controlled substance?

Appellant's Brief at 5.

In his first argument, Appellant contends that the court erred by permitting the Commonwealth to question Baizar after Baizar and his attorney indicated prior to trial and on the first day of trial that Baizar would invoke his Fifth Amendment privilege against self-incrimination. Baizar maintained that his position remained unchanged even after the grant of immunity. Relying principally on *Commonwealth v. Duval*, 307 A.2d 229 (Pa. 1973), Appellant insists that Baizar's refusal to testify prejudiced Appellant and caused the jury to convict him based on guilt by association.

In *Duval*, our Supreme Court reversed the defendant's conviction for voluntary manslaughter and ordered a new trial because the prosecutor summoned two witnesses to the stand with foreknowledge that they intended to invoke their privilege against self-incrimination. The same events took place with regard to each witness. Each witness gave her name and address when called to the stand and then asserted her Fifth amendment privilege in response to all other questions. Out of the jury's presence, the trial court held that each witness waived her privilege by testifying during prior proceedings in the case (a grand jury proceeding and a *habeas corpus* hearing). The jury returned, and the court ordered the witness to testify, but each witness continued to refuse to testify. The court held each witness in contempt, and

each was led off in the custody of the sheriff. Citing its then recent case of **Commonwealth v. Terenda**, 301 A.2d 625 (Pa. 1973), the Court concluded that calling these witnesses to testify was prejudicial error due to "the risk that the jury would draw adverse inferences against the defendant." **Duval**, 307 A.2d at 232. The court held that when the prosecutor attempts to capitalize on a witness's refusal to testify on grounds of self-incrimination,

> there is a special vice: the inference to be drawn from the refusal to testify of the defendant's co-defendant, accomplice or associate, has [n]o probative value whatsoever in establishing the guilt of the defendant. It is rather an effort to use the jury to think guilt by association.

*Id.* at 232-33.

The Commonwealth argued that it acted in good faith because it honestly believed that the claim of privilege of which it had been forewarned would not be legally sustainable on the ground that the witnesses had waived their privilege by testifying on prior occasions. The Court rejected this argument because, *inter alia*, the Commonwealth's position was contrary to **Snyder's Appeal**, 157 A.2d 207 (Pa. 1960), which held that a witness could invoke her Fifth Amendment privilege on the stand during trial even though she had testified concerning the same subject in preliminary proceedings. *Id.* at 233 & n.5. The Court further stated that a good-faith belief was irrelevant. The Court explained:

> The witness' known intent to invoke the privilege coupled with the prosecutor's opinion that the testimony sought can be nevertheless compelled presents the risk that, as actually occurred twice in the case at bar, the witness might prove not only

- 8 -

reluctant to testify but contumacious as well. If the fact of invocation of the privilege is, as we believe, irrelevant to the issues and prejudicial to the defendant, it is that much more prejudicial to permit the jury to observe that the recalcitrant witness (a person likely to be associated in the juror's minds with the defendant) elects to remain silent notwithstanding the order of the court that he testify.

In the case at bar it would have been a simple matter indeed, with the jury already removed from the courtroom, to determine whether the witnesses . . . would continue to assert a privilege despite the contrary ruling by the court. Permitting the jury to return to the courtroom and then to observe [each witness] being cited for contempt and marched out in the custody of the sheriff was prejudicial to the defendant.

**We therefore hold that the prosecution, once informed that a witness intends to claim a privilege against self-incrimination, commits error in calling that witness to the stand before the jury where the witness is a person (co-defendant, accomplice, associate, etc.) likely to be thought by the jury to be associated with the defendant in the incident or transaction out of which the criminal charges arose. Whether or not the prosecution has a good faith belief that the assertion of privilege is legally invalid is irrelevant**; that matter can be settled outside the hearing of the jury.

*Id.* at 234-35 (emphasis added).

Appellant is correct that under *Duval*, it is prejudicial error for a prosecutor to call a witness to the stand knowing that the witness will invoke their privilege against self-incrimination under circumstances where the witness is likely to be considered as associated with the defendant with respect to the criminal charges being tried. Nonetheless, we find *Duval* not applicable here because Baizar never invoked his privilege against self-incrimination in front of the jury.

The prejudice to be avoided by prohibiting a prosecutor from calling an alleged accomplice to the stand, knowing the witness will assert their privilege against self-incrimination in the presence of a jury, is the human tendency to treat the claim of privilege as a confession of a crime or guilt, thereby creating an adverse inference that the defendant is unable to confront through cross-examination. *Id.; see also State v. Allen*, 224 N.W.2d 237, 241 (Iowa 1974). There is a distinct danger that jurors will misconstrue a known co-actor's refusal to testify on Fifth Amendment grounds as evidence of the defendant's guilt by association. *Commonwealth v. Todaro,* 569 A.2d 333, 335 (Pa. 1990).[5]

Our Supreme Court's decision in *Todaro* is sufficiently analogous to control the outcome on this issue of privilege. In *Todaro*, the Commonwealth accused the defendant of committing multiple burglaries with a co-actor named Kinsey. During trial,

> Kinsey was called to the stand by the Commonwealth. After being sworn, he quietly turned to the trial judge and requested to plead the Fifth, stating that he did not want to testify. The request was deemed proper since he had not yet been sentenced on his guilty plea.
>
> The trial judge called counsel to side bar and informed them of Kinsey's request, which neither of them had heard. He granted a recess and, out of the presence and hearing of the jury, he heard

_____

[5] In our view, this prejudice would be exacerbated if a jury, in addition to being informed that the witness is invoking the Fifth Amendment, also is told the witness is doing so despite a grant of immunity, because this latter fact would reinforce the adverse inference against the defendant of guilt by association.

the prosecuting attorney explain that the witness, the day before, had indicated he would have no problem in testifying. Defense counsel complained that he had told the prosecuting attorney two months before that the witness would invoke his Fifth amendment privilege and refuse to testify. He argued, therefore, that a mistrial must be granted in accordance with the rule we have laid down in *DuVal*….

*Id.* at 334. Counsel argued that Kinsey's appearance and excusal from testifying for no apparent reason prejudiced the defendant in the eyes of the jury. Counsel maintained that since the jury knew Kinsey had certain stolen items in his possession from the various burglaries, the jury imputed Kinsey's guilt to the defendant.

Our Supreme Court granted allocatur to consider whether a mistrial must be declared where a co-actor is called as a witness by the Commonwealth, is sworn, takes the witness stand, but then leaves the stand without explanation to the jury. The Court granted review to determine whether such conduct was consistent with its decisions in *Duval* and *Commonwealth v. Virtu*, 432 A.2d 198 (Pa. 1981) (mistrial declared and subsequent retrial barred by double jeopardy where prosecutor's misconduct in calling a witness to the stand knowing the witness would invoke his Fifth Amendment privilege was found to be intentional to prejudice the defendant). *Todaro*, 569 A.2d at 334. The Court found that the facts in *Todaro* compelled a different result than that in *Duval* and *Virtu*, because the witness did not invoke his self-incrimination privilege in front of the jury. The Court dismissed the argument that Kinsey's appearance and unexplained departure from the

stand prejudiced the defendant as the "sheerest speculation!  The jury was just as likely to conclude that [] Kinsey had decided at the last minute to testify against the Commonwealth and was dismissed for that reason . . . [T]here was nothing that occurred that would be likely to cause the jury to infer *anything*, one way or the other."  **Id.** at 336 (emphasis in original).  "It is the expressed, highlighted reference to the Fifth Amendment privilege that may prejudice or influence a jury, not mere silence itself."  **Todaro**, 569 A.2d at 336.  This adverse inference does not arise when the witness refuses to testify or remains silent and does not invoke the Fifth Amendment in front of the jury.  **Id.**

Like the witness in **Todaro**, but unlike the witnesses in **Duval**, Baizar did not expressly invoke his self-incrimination privilege in front of the jury; he simply refused to answer questions and then remained silent.  Nothing about Baizar's refusal to answer or his remaining silent suggested that the reason for his conduct was his assertion of his Fifth Amendment privilege.  A witness "does not expressly invoke the privilege by standing mute."  **Salinas v. Texas**, 570 U.S. 178, 187 (2013) (plurality).  If he desires the protection of the privilege, he "must claim it at the time he relies on it."  **Id.**  Just as the jury had nothing to infer from Kinsey's departure from the stand in **Todaro**, so too there was nothing to infer from Baizar's refusal to answer or remain silent.  Nothing in Baizar's silence or refusal to answer gave the jury any

reason to suspect that he was invoking his Fifth Amendment privilege. Accordingly, Appellant is not entitled to relief on this issue.

In his second argument, Appellant claims that the trial court erred by allowing the Commonwealth to amend the original information in violation of Pa.R.Crim.P. 564 by changing the charge of conspiracy to commit PWID to PWID-accomplice liability. We find no error.

On the first morning of trial, immediately before opening statements, the Commonwealth sought leave to amend the information to charge PWID-accomplice liability instead of conspiracy to commit PWID. Appellant objected on the grounds that (1) the amendment was not minor because conspiracy to commit PWID is distinct substantively from PWID-accomplice liability, (2) the defense strategy would have to change as a result of this amendment, and (3) the timing of the Commonwealth's request did not give defense counsel adequate time to prepare. N.T., 6/9/21, at 8-10. Counsel requested a continuance if the court intended to grant the amendment. *Id.* at 10. The court ruled that a continuance was unnecessary and granted the Commonwealth's motion to amend. *Id.* at 14. The court charged the jury that Appellant could be found guilty of PWID based on accomplice liability, and the jury returned a verdict of guilty on this count.

We review decisions to allow an amendment to the information for abuse of discretion. ***Commonwealth v. Small***, 741 A.2d 666, 681 (Pa. 1999).

Prior to December 21, 2017, the version of Rule 564 in effect provided:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (former version). Effective December 21, 2017, our Supreme Court amended Rule 564 to provide:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (effective Dec. 21, 2017). The Comment to amended Rule 564 states:

> The rule was amended in 2016 to more accurately reflect the interpretation of this rule that has developed since it first was adopted in 1974. *See Commonwealth v. Brown*, 727 A.2d 541 (Pa. 1999). *See also Commonwealth v. Beck*, 78 A.3d 656 (Pa. Super 2013); *Commonwealth v. Page*, 965 A.2d 1212 (Pa. Super. 2009); *Commonwealth v. Sinclair*, 897 A.2d 1218 (Pa. Super. 2006).

Comment, Pa.R.Crim.P. 564 ("Comment").

Rule 564's purpose is to "ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last-minute addition of alleged criminal acts of which the defendant is uninformed." *Sinclair*, 897 A.2d at 1221. The three Superior Court decisions cited in the Comment (*Beck*, *Page*, and *Sinclair*) list six factors that the court must weigh in determining whether an amendment is prejudicial:

> (1) Whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

**Beck**, 78 A.3d at 660; **Page**, 965 A.2d at 1224; **Sinclair**, 897 A.2d at 1221.[6]

Because new Rule 564 reflects the standards articulated in these decisions, we will apply them to review whether prejudice resulted in the present case.[7]

Decisions from this Court provide many examples of amendments that do not prejudice the defendant. For example, in **Commonwealth v. Whitmayer**, 144 A.3d 939 (Pa. Super. 2016), a case involving sexual abuse of a lone victim, we concluded that adding sexual misconduct charges from Chester County "did not add any new facts or charges of which [the defendant] was previously unaware. Both the criminal complaint and affidavit of probable cause detailed acts of abuse occurring in both Chester County and Montgomery County." **Id.**, 144 A.3d at 947. Therefore, the missing phrase,

---

[6] The fourth case, the Supreme Court's decision in **Brown**, did not include this list, presumably because the first three factors in the list were not implicated in that case.

[7] This Court also has applied the six-factor test in cases that went to trial after new Rule 564's effective date of December 21, 2017. **See**, **e.g.**, **Commonwealth v. Jackson**, 215 A.3d 972, 979 (Pa. Super. 2019); **Commonwealth v. Ricci**, 2023 WL 5013697, *4 (Pa. Super., Aug. 7, 2023) (non-precedential decision).

"County of Chester," was "merely a defect in form," *id.* at 948, and the amendment did not violate Rule 564. Similarly, in ***Sinclair***, a prosecution for driving under the influence of alcohol ("DUI"), an amendment to charge the defendant with a lower range of blood alcohol content was permitted, because he could not demonstrate any prejudice by being charged in a lower range. "Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results." ***Sinclair***, 897 A.2d at 1222; ***see also Beck***, 78 A.3d at 661 (defendant was not prejudiced by amendment to information adding DUI-high rate of alcohol, because he: (1) was on notice, due to prior filings, that the additional charge would be included; (2) cross-examined Commonwealth's witness on information relevant to defense on this charge; (3) did not assert any specific prejudice suffered as result of amendment; and (4) did not request postponement to retain expert witness); ***Page***, 965 A.2d at 1224 (defendant was not prejudiced by amendment to information for aggravated indecent assault charge, from a child under 18 to a child under 13, because amendment did not require change in defense strategy, child victim was known to defendant before trial, and defendant was aware age was element of offense).

In contrast, in ***Brown***, our Supreme Court did find prejudice when, immediately before trial, the Commonwealth added charges alleging rape and

- 16 -

involuntary deviate sexual intercourse ("IDSI") with an unconscious person, and the defendant was subsequently convicted of these charges as well as indecent assault, indecent exposure, and aggravated indecent assault. The Court explained:

> The original information included the charges of Rape and IDSI by forcible compulsion. In order to prove the "forcible compulsion" component of these charges, the Commonwealth was required to establish beyond a reasonable doubt that appellant used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for Rape and/or IDSI by forcible compulsion. The amendment introduced the charges of Rape and IDSI with a person who is unconscious. These latter charges did not require proof by the Commonwealth that force of any sort was employed by the accused. Consequently, the amendment to the information violated Rule [564] by introducing new offenses.

*Id.*, 727 A.2d at 544. After determining that the amendment at issue violated the rule by introducing new offenses, the Court held that the amendment prejudiced the appellant:

> [B]ased on the original charges, appellant had every reason to expect that the Commonwealth would be attempting to establish that the victim was *conscious* during the sexual encounter. It would be virtually impossible for the Commonwealth to meet its burden of establishing that appellant used physical force, a threat of physical force, or psychological coercion against the victim if the Commonwealth did not first establish that the victim was conscious. Assuming the Commonwealth could establish that the victim was conscious, appellant's primary line of defense would have been that she consented to the encounter. When the Commonwealth shifted the focus of its case to proving that the victim was *unconscious,* the Commonwealth vitiated appellant's primary line of defense, since consent is not a defense to the charges of Rape and/or IDSI with an unconscious person. Therefore, by varying the information at the eleventh hour, the Commonwealth rendered appellant's primary defense a nullity.

***Id.*** (emphasis in original). The Court reversed the defendant's rape and IDSI convictions, and because the other charges were lesser-included offenses relative to rape and IDSI, the Court granted a new trial as to all charges.

More recently, in ***Commonwealth v. Quinones***, 200 A.3d 1004 (Pa. Super. 2018), the Commonwealth originally charged the defendant with abuse of corpse, conspiracy to abuse corpse, and firearms charges. The defendant and his cohort used a Honda Odyssey van to transport handguns as well as the corpse of an individual whom the cohort had shot and killed. Months after the defendant's arrest on these charges and his preliminary hearing, the police searched the Odyssey and found drugs and paraphernalia. The Commonwealth moved to amend the information to add charges of PWID and possession of drug paraphernalia. The court granted the motion. The jury found the defendant guilty of one firearms charge, abuse of corpse, conspiracy to abuse corpse, PWID, and possession of drug paraphernalia.

Applying the six-factor test described above, this Court vacated the defendant's convictions and remanded for a new trial on all charges. We held that the amendment to the information added new facts relating to drug activity that were not in the original information. Moreover,

> The description of the charges changed drastically with the amendment, taking the case from one of guns and abuse of corpse to one involving drug dealing and drug possession. As a result, a change in defense strategy was necessitated in order to defend against the new charges, which were unrelated to the original charges and painted a different picture of the events[.]

- 18 -

*Quinones*, 200 A.3d at 1012-13. We also cited with approval the argument in the defendant's appellate brief that the effect of the amendments to the information was to tarnish the defendant's character as a drug dealer. *Id.* at 1013-14. Consequently, we vacated the defendant's judgment of sentence and remanded with instructions to sever the drug charges from the charges in the original information. *Id.* at 1014.

With these precedents as backdrop, we turn to the present case. Appellant does not satisfy the first three factors in the six-part test, because the amendment to the information did not change the factual scenario supporting the charges or add new facts previously unknown to Appellant, and the entire factual scenario was developed during the preliminary hearing.

Appellant contends that he satisfies the fourth and fifth factors of the test, arguing:

> [With regard to factor 4,] there is absolutely no question the description of the charges changed with the amendment. The Commonwealth went from having to prove an agreement, whether direct or implied, between the Appellant and the co-defendant, Charles Baizar, to merely showing that the Appellant was an accomplice who aided and abetted in the commission of the said crime. Looking at factor 5, clearly there was a change in strategy at the time of trial. At all times relevant hereto, the Appellant was prepared to argue that there was no evidence of a conspiracy between him and Mr. Baizar other than their mere association. Clearly, under conspiracy, the Appellant could not be convicted because he or she was merely present with others, or even because he or she knew what the others had planned or were doing. There had to be actual proof of an agreement between the Appellant and another person or persons to form or continue a conspiracy.

Appellant's Brief at 25.

- 19 -

As stated above, courts have identified the fourth factor as "whether the description of the charges changed with the amendment." **Beck**, 78 A.3d at 660. We think it important to examine this factor in conjunction with the text of Rule 564, *i.e.*, relief is unavailable unless "the amended charges are . . . so materially different from the original charge that the defendant would be unfairly prejudiced." **Id.** Since the Commonwealth did not file a written amended information charging PWID-accomplice liability, we will analyze the fourth factor by comparing the original information's description of the conspiracy charge with the court's jury instructions on PWID-accomplice liability. For two reasons, the description of the charges did not change with the amendment to the information.

First, the original charge of conspiracy to commit PWID and the jury instruction on accomplice liability both required the Commonwealth to prove that Appellant had the "intent of promoting or facilitating the commission of the crime of [PWID]." Information, Count 1 (conspiracy charge); N.T., 6/11/21, at 6-7 (jury instruction on accomplice liability).

Second, both the original charge of conspiracy to commit PWID and the jury instructions on accomplice liability contain the element of an "agreement" between Appellant and others. The original information charged Appellant with conspiracy by alleging that Appellant, did agree with [Baizar, Morales] and others, known or unknown, and agreed with them to engage in conduct which constitutes [PWID]." Information, Count 1. Count 1 alleged an

"agreement" because an agreement is an element of conspiracy. ***See*** 18 Pa.C.S.A. § 903(a)(1) ("A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime").[8]  The jury instructions on PWID-accomplice liability also include the element of an agreement.  The court instructed:

> To be an accomplice, a person does not have to agree to help someone else.  A person is an accomplice if he, on his own, acts to help the other person commit a crime.  More specifically, you may find that the defendant is an accomplice of another, in this case, if the following two elements are proven beyond a reasonable doubt:
>
> First, that the defendant had the intent of promoting or facilitating the commission of the offense . . . and the defendant aids, **agrees to aid**, or attempts to aid the other person in planning or committing the crime.  It is important to understand that a person is not an accomplice merely because he is present when a crime is committed or knows that a crime is committed.  To be an accomplice, the defendant must specifically intend to bring about the crime by assisting another in its commission.

N.T., 6/11/21, at 7, 24 (emphasis added).[9]

_____

[8] Another subsection of the conspiracy statute provides that the defendant is guilty of conspiracy if he "agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."  18 Pa.C.S.A. § 903(a)(2).  The Commonwealth, however, did not charge Appellant with violating this subsection.

[9] The "agrees to aid" element also is included in the Crimes Code's definition of an accomplice.  ***See*** 18 Pa.C.S.A. § 306(c).

We turn to the fifth factor, "whether a change in defense strategy was necessitated by the amendment." **Beck**, 78 A.3d at 660. No change in strategy was necessary. As discussed above, the original charge of conspiracy included the element of an agreement. So, too, did the amended charge of PWID-accomplice liability, because the trial court instructed that this charge includes the element of an agreement. N.T., 6/11/21, at 7, 24. Thus, the change in charges from conspiracy to PWID-accomplice liability did not preclude defense counsel from making the same argument he intended to make in opposition to the conspiracy charge: no agreement existed between Appellant and the other males.

Nor did the amended charge necessitate any other change in Appellant's trial strategy. We acknowledge that the charge of PWID-accomplice liability added one element that was not present in the conspiracy charge: the element that Appellant "aided" others in possessing heroin with intent to deliver it. In the context of this case, however, we do not consider "aiding" the other males materially different from the conspiracy element of "agreeing" with others to "engage in conduct which constitutes [the] crime." 18 Pa.C.S.A. § 903(a)(1). The evidence that Appellant aided others in committing PWID was precisely the same as the evidence that the Commonwealth would have proffered to prove Appellant's agreement with others to commit PWID—specifically, Appellant's trip together with the others from Chicago to Erie, their occupancy of the same hotel room, their presence together in the car in the parking lot,

Appellant's possession of a gun while two of his companions approached the SUV with a package of heroin, Appellant's firing of the gun toward the SUV after the SUV's occupants fired at his companions, and Appellant's flight from the parking lot with Baizar. We see no difference between the strategy that Appellant used in defending against this evidence in a PWID-accomplice liability prosecution to the strategy that he would have used in defending against the same evidence in a conspiracy prosecution.

The absence of any need to devise a new strategy distinguishes this case from decisions in which amendment of the charges necessitated a new trial. *See Brown, Quinones*, *supra*. In *Brown*, the amendment in charges from rape by forcible compulsion to rape of an unconscious person changed the charge from one requiring proof of force to one requiring entirely different evidence, *i.e.*, proof that the victim was unconscious. *Id.*, 727 A.2d at 544. In *Quinones*, the addition of PWID and drug paraphernalia charges to the original charges of abuse of corpse and gun possession "changed [the charges] drastically . . . from one of guns and abuse of corpse to one involving drug dealing and drug possession." *Id.*, 200 A.3d at 1012-13. The defendants in these cases had to create new strategies unrelated to the original charges to defend against new evidence. No such change in strategy was necessary in the present case.

Finally, as to the sixth factor, Appellant argues that the Commonwealth's request for amendment on the first morning of trial did not allow for ample

notice and preparation. While an earlier request might have been more courteous, we agree with the trial court that Appellant suffered no prejudice, and therefore no continuance was necessary. As discussed above, Appellant was able to make the same argument against the PWID-accomplice liability charge as he intended to make against the conspiracy charge, and the change in charges did not force him to make any other change in strategy.

In short, we conclude that Appellant fails to meet any of the six factors used to analyze claims of error under Rule 564.

Because neither of Appellant's arguments has merit, we affirm his convictions. However, we are obliged to remand for consideration of a sentencing issue that we raise *sua sponte*. **See Commonwealth v. Watson**, 228 A.3d 928, 941 (Pa. Super. 2020) (issues relating to legality of sentence may be raised *sua sponte* by appellate court). In its sentencing order, the court sentenced Appellant to 7½-15 years' imprisonment for conspiracy to commit PWID, instead of PWID itself. On remand, we direct the trial court to determine whether the reference to conspiracy to commit PWID in its sentencing order was merely a clerical error, or if in fact Appellant was sentenced to conspiracy to commit PWID. If the court determines the reference to conspiracy in its sentencing order was merely a clerical error, the court may correct this error without conducting further proceedings. **See Commonwealth v. Black**, 531 A.2d 492, 493 (Pa. Super. 1986) (where defendant pled guilty to false imprisonment but was sentenced for unlawful

restraint, "this error should be corrected"); ***see also Commonwealth v. Rosario***, 248 A.3d 599, 606-07 (Pa. Super. 2021) (trial court may correct its clear clerical error or patent and obvious mistake in sentencing order; court was authorized to correct sentencing order to reflect that defendant was sentenced on one, not three, conspiracy charges, where sentencing transcript clearly supported conviction and correction did not affect aggregate sentence). If on the other hand, the court incorrectly sentenced Appellant on conspiracy to commit PWID, rather than PWID, then the court shall vacate Appellant's current sentence and resentence Appellant for those crimes upon which he was convicted. It has been settled for over a century that a defendant can only be sentenced for crimes that they have been charged with and have been found guilty of committing. ***See Conway v. Commonwealth***, 4 Walker 106, 1881 WL 14631 (Pa. 1881) (where defendant was convicted of larceny and acquitted of burglary, it was error to count larceny as a second offense).

Appellant's convictions affirmed. Case remanded for further proceedings relating to Appellant's sentence. Jurisdiction relinquished.

Judge Sullivan joins the Opinion.

Judge Pellegrini files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/28/2023